## C. H. COX et al. v. STATE.

No. A-5067.    Opinion Filed June 2, 1925.
(236 Pac. 436.)

(Syllabus.)

1. **Intoxicating Liquors—Information for Unlawful Possession Held Defective—Sour Mash.** An information for unlawful possession of intoxicating liquors, alleged to be "sour mash being fit and intended for the manufacture of whiskys," is fatally defective in omitting to allege that the same contained as much as one-half of one per cent. of alcohol, measured by volume, and was capable of being used as a beverage.

2. **Same—Evidence Insufficient to Sustain Conviction for Unlawful Possession.** In a prosecution for unlawful possession of intoxicating liquors, evidence held insufficient to sustain the verdict and judgment of conviction.

Appeal from County Court, Love County; B. W. Jones, Judge.

C. H. Cox and W. W. Mason were convicted of unlawful possession of intoxicating liquor, and they appeal. Reversed and remanded, with direction.

Hays & Dixon, for plaintiffs in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case charges that in Love county, December 17, 1923, "C. H. Cox and W. W. Mason, each of them acting together, did then and there willfully and unlawfully have in their possession 300 gallons of intoxicating liquor, to wit, sour mash; the said sour mash mentioned aforesaid being fit and intended for

the manufacture of intoxicating whiskys, with the unlawful intent to violate the prohibitory liquor laws of the state of Oklahoma." On the trial the jury returned a verdict, finding the defendants guilty as charged in the information, and fixed their punishment at a fine of $50 and confinement for 30 days in jail, signed by five jurors.

Charles L. Clark and John Turner, deputy sheriffs, testified that they were out in the country walking through the woods and ran across some wagon tracks that they followed and found four barrels of mash and two empty barrels concealed in a hole in the ground and covered over with brush; that they continued to follow the wagon tracks and noticed that the team consisted of a horse and mule; that they followed the tracks about a quarter of a mile to the house of the defendant Cox; they questioned him about the mash, and he denied any knowledge of its presence; they told him where it was located, and he said he did not know whether it was on his land or not; that he had hauled a load of wood from Mason's place a few days before. They observed that Cox had a team consisting of a horse and mule, and the horse had a peculiar cleft in the right front foot and made the kind of a track that they had seen near the barrels of mash. They also followed tracks to the house occupied by the defendant Mason. They also observed that Mason had a team consisting of a horse and mule, and that Mason's horse had a peculiar cleft in the right front foot which made the same kind of a track they found near the barrels of mash; that Mason was informed of the location of the mash and he said that he did not know whose land it was on.

At the close of the state's evidence there was a motion by the defendants for a directed verdict in the form of a demurrer to the evidence, and on the ground that the evidence was insufficient to connect them with the alleged offense. Which motion was denied.

As witnesses in their own behalf, defendants denied

any knowledge of the mash; that their homes were about a mile apart, with timbered land between, owned by one Miller at Ardmore and controlled by one McClusky, as agent. Each testified that they had never before been arrested.

Three neighbors testified that they visited the scene immediately after the officers had destroyed the mash and they did not see any tracks leading to and from the houses of the defendants; that they found the pasture fence out and down in two places, and there were wagon tracks from where the mash was found out to these openings; that they knew the general reputation of the defendants in the community for being law-abiding citizens, and that it was good.

The defendants interposed a demurrer to the information on the ground that it does not state facts sufficient to constitute a public offense. The overruling of the demurrer is the first error assigned.

The information was evidently drawn under section 7002, C. S. 1921, as section 1, ch. 42, Session Laws 1923-24, approved March 22, 1924, making it unlawful "to manufacture, ferment or possess, any compound mixture, mash, wort or wash, fit for distillation," was not in effect when this prosecution was instituted.

An information based on said section 7002 should have alleged that the so-called "sour mash" contained as much as one-half of one per cent. of alcohol, measured by volume, and which is capable of being used as a beverage. In the absence of these essential allegations, the information is not sufficiently definite, direct, and certain as to the offense intended to be charged. It is alleged that the said sour mash was "fit and intended for the manufacture of intoxicating whiskys." It may be the pleader intended to charge an attempt to manufacture whisky instead of unlawful possession of intoxicating liquor. As it is the information is ambiguous, uncertain, and defective in its allegations.

It follows that the court erred in overruling the demurrer thereto. Jerome v. State, 20 Okla. Cr. 131, 229 P. 527.

There being no evidence showing or tending to show these essential elements of the offense intended to be charged, the motion to direct a verdict should have been sustained. Halfmoon v. State, 28 Okla. Cr. 283, 230 P. 294.

For the reasons stated the judgment is reversed, and the cause remanded, with direction to the court below to sustain the demurrer to the information.

BESSEY, P. J., and EDWARDS, J., concur.